WEILAND, GOLDEN
SMILEY, WANG EKVALL & STROK, LLP
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Kyra E. Andrassy, State Bar No. 207959
kandrassy@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone: 714-966-1000
Facsimile: 714-966-1002

Special Counsel for
Thomas H. Casey, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 08:06-bk-10195-RK |
| LLOYD MYLES RUCKER, | Chapter 7 |
| Debtor. | Adv. No. 08:09-ap-01513-RK |
| THOMAS H. CASEY, Chapter 7 Trustee, | **MOTION FOR (1) ORDER SHORTENING TIME FOR NOTICE OF HEARING ON MOTION FOR TURNOVER OF CUSTODY OF FUNDS ON DEPOSIT AT WELLS FARGO ADVISORS, LLC, PURSUANT TO 11 U.S.C. § 542(a) AND (2) REQUEST FOR ORDER UNDER 11 U.S.C. § 105(a) KEEPING RESTRICTIONS IN PLACE PENDING FURTHER COURT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KYRA E. ANDRASSY IN SUPPORT THEREOF** |
| Plaintiff, | |
| vs. | |
| WELLS FARGO ADVISORS, LLC, and LLOYD MYLES RUCKER, solely in his capacity as the trustee of the Lloyd Rucker Defined Benefit Pension Plan Trust, the Secure Capital Inc. 401(k) Profit Sharing Plan and Trust, the EZ Equity Inc. 401(k) Profit Sharing Plan and Trust, the Vision Capital 401(k) Profit Sharing Plan and Trust, and the IQ Capital, Inc. 401(k) Profit Sharing Plan and Trust, | |
| | **[No hearing required pursuant to Local Bankruptcy Rule 9075-1]** |
| Defendants. | |

TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY

JUDGE AND THE OFFICE OF THE UNITED STATES TRUSTEE, WELLS FARGO

BANK, N.A., LLOYD MYLES RUCKER, AND ANY PARTIES IN INTEREST:

Thomas H. Casey, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of

Lloyd Myles Rucker (the "Debtor"), moves the Court for an order shortening the notice

1 period for the Trustee's motion directing Wells Fargo Advisors, LLC ("Wells Fargo"), and

2 the Debtor to turnover custody of all funds on deposit in connection with the Lloyd Rucker

3 Defined Benefit Pension Plan or the Debtor's 401(k) plan(s) (the "Turnover Motion")

4 because the Debtor's beneficial interest in those funds has been determined to be

5 property of the Debtor's bankruptcy estate. The Trustee seeks a hearing on shortened

6 time because the Ninth Circuit's decision became final on August 27, 2009, and the

7 existing order restricting the Debtor's access to these accounts may no longer be in effect.

8 Because the Debtor has a lengthy history of fraudulent conduct and has evidenced an

9 intention to keep his assets shielded from creditors, the Trustee is concerned that the

10 Debtor will dissipate the funds on deposit and is more likely to do so if there is no order in

11 place restricting his access to the funds. Accordingly, to minimize that risk and fulfill his

12 duty to preserve assets, especially because the accounts are the main asset of this

13 estate, the Trustee believes that a hearing on shortened time is warranted and also

14 requests that the Court order that the existing restrictions on the Debtor's access to the

15 accounts remain in effect pending further Court order.

16

17 I.    **INTRODUCTION**

18          One of the early matters in this case was an objection to the Debtor's claims that

19 his interests in the Lloyd Rucker Defined Benefit Pension Plan and in his 401(k) plans

20 were exempt as private retirement plans under California law. The Bankruptcy Court

21 ruled that the Debtor's beneficial interest in these retirement plans was not exempt and

22 was therefore property of the Debtor's bankruptcy estate, and the Debtor appealed the

23 ruling to the United States District Court, which reversed the Bankruptcy Court. The

24 District Court's decision was appealed to the Ninth Circuit and, pending the outcome of

25 that appeal, the District Court restricted the Debtor's access to the accounts belonging to

26 the retirement plans so that he could control where the funds were invested in the

27 investment options offered by the fund manager but could not otherwise dissipate the

28 funds. The Ninth Circuit recently issued its ruling, finding that the Debtor's interest in the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  retirement plans is in fact property of the estate, and the mandate issued on August 27,

2  2009. As a result of the issuance of the mandate, the District Court's order restricting the

3  Debtor's access to the accounts is arguably no longer in effect, and the Trustee is

4  concerned that, given his history of deceptive conduct, the Debtor will take advantage of

5  that lapse and dissipate the funds on deposit. Accordingly, in order to eliminate that risk

6  and to preserve the main asset of the Debtor's bankruptcy estate, the Trustee seeks an

7  order shortening the time for notice of the hearing on his Turnover Motion so that it can be

8  heard on less than twenty-one days' notice. Pending the hearing on the Turnover Motion,

9  the Trustee also seeks an order from this Court providing that the restrictions placed on

10  the Debtor that limit his access to the accounts remain in effect pending further order of

11  this Court.

12

13  **II.**   **BACKGROUND FACTS**

14  In 1997, Ronald Cunning, D.D.S. ("Cunning"), obtained a civil judgment against the

15  Debtor for fraud and breach of fiduciary duty, and the Debtor served time in federal prison

16  for the same conduct that gave rise to Cunning's judgment. In 2005, at least partially (if

17  not entirely) because of Cunning's judgment enforcement efforts, the Debtor filed a

18  chapter 7 bankruptcy petition. After venue of the case was transferred from Florida to this

19  Court, the Trustee was appointed.

20  When the Debtor filed his bankruptcy schedules, he disclosed his beneficial

21  interests in the Lloyd Rucker Defined Benefit Pension Plan (the "Pension Plan"), the

22  Secure Capital 401(k) Profit Sharing Plan, the EZ Equity 401(k) Profit Sharing Plan, and

23  the Vision Capital 401(k) Profit Sharing Plan (the "401(k) Plans" and, together with the

24  Pension Plan, the "Retirement Plans") and declared his interests in them exempt under

25  California Civil Procedure Code § 704.115(b) as private retirement plans. In April 2006,

26  Cunning objected to the Debtor's claim of exemption in these assets, contending that they

27  were not exempt under the applicable law because the Retirement Plans had not been

28  primarily designed and used for retirement purposes. A trial ensued. Eventually, the

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

1 Bankruptcy Court issued its Memorandum Decision, a copy of which is attached as Exhibit

2 "1," sustaining Cunning's objection and finding that because the Debtor's primary purpose

3 in establishing and funding the Retirement Plans was to shield his assets from Cunning,

4 his interests in them were not exempt. The Debtor appealed to the United States District

5 Court, Central District of California (the "District Court"). Pending the outcome of that

6 appeal, the Debtor and Cunning stipulated to a stay pending appeal, contingent upon the

7 Debtor's posting of a bond in the amount of $250,000, which he eventually posted.

8       In March 2008, the District Court entered its order reversing the Bankruptcy Court's

9 ruling and finding that the Retirement Plans were exempt. Cunning appealed that

10 decision to the Ninth Circuit and, concerned that the Debtor would dissipate the funds,

11 sought a stay of the District Court's decision pending appeal. The Debtor requested a

12 partial stay, contending that he wanted to transfer the accounts owned by or in the name

13 of the Retirement Plans (the "Retirement Accounts") and consolidate them with Wachovia

14 Securities. The District Court ultimately entered an order granting a partial stay (the "Stay

15 Order") that prohibited the Debtor from accessing or dissipating the funds on deposit in

16 the Retirement Accounts during the pendency of the appeal to the Ninth Circuit, but

17 allowing him to consolidate the funds with a single fund manager and reallocate the funds

18 among different investment products offered by that fund manager to preserve their value.

19 A copy of the Stay Order is attached as Exhibit "2." The Trustee is informed that the

20 Debtor transferred the Retirement Accounts to Wachovia Securities soon thereafter. The

21 401K Plans were rolled over to the IQ Capital Inc. 401(k) Plan.

22       In June 2009, the Ninth Circuit issued its opinion reversing the District Court and

23 affirming the Bankruptcy Court. A copy of that opinion is attached as Exhibit "3." The

24 Ninth Circuit issued the mandate on August 27, 2009, a copy of which is attached as

25 Exhibit "4," and jurisdiction has therefore transferred back to the Bankruptcy Court for

26 implementation of the ruling and the appeal to the Ninth Circuit is no longer pending.

27 Because the appeal to the Ninth Circuit is no longer pending, the Trustee is concerned

28 that the Debtor will interpret that as meaning that the partial stay ordered by the District

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

1 Court is no longer in effect and dissipate the funds on deposit in the Retirement Accounts.

2 Accordingly, the Trustee seeks the immediate turnover of custody of the funds on deposit

3 in the Retirement Accounts to address this concern and to preserve assets that belong to

4 the Debtor's bankruptcy estate. In addition, pending the hearing on the Turnover Motion,

5 the Trustee is requesting that the Court order that the restrictions placed by the District

6 Court on the Debtor's access to the Retirement Accounts remain in effect pending further

7 Court order.

8

9 III.    **MEMORANDUM OF POINTS AND AUTHORITIES**

10        Local Bankruptcy Rule 9075-1 provides that the Court can shorten the period for

11 notice of a hearing "for good cause shown." Here, the Trustee seeks a hearing on the

12 Turnover Motion on shortened time because the Debtor has a lengthy history of fraudulent

13 conduct and has evidenced an intent to shield his assets from creditors. Indeed, in the

14 Bankruptcy Court's Memorandum Decision, it found that the Debtor had no credibility and

15 further found as follows:

16              Debtor completely disregarded these limits and reporting
                 requirements with the primary intent of frustrating Movant's
17              collection efforts by hiding these funds. Debtor consistently
                 broke the rules to accomplish this goal. Movant presented
18              substantial evidence demonstrating a pattern of lying,
                 misrepresentations, and questionable transactions designed to
19              frustrate his efforts to collect on the Judgment.

20 Memorandum Decision at 12. On August 27, 2009, the Ninth Circuit's decision became

21 final. The effect of that decision is that the Debtor's claim that his interests in the

22 Retirement Plans are exempt is overruled, rendering his interests in the Retirement Plans

23 and their assets, including the Retirement Accounts, property of the Debtor's bankruptcy

24 estate that may be administered by the Trustee to the extent that they are not

25 encumbered. As a result of the issuance of the mandate, the appeal is no longer pending

26 and the Stay Order will presumably no longer be in effect. In order to avoid the risk that

27 the Debtor might take advantage of that opportunity to dissipate the Retirement Accounts

28 and because the Trustee has a fiduciary duty to creditors and must preserve assets of the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

estate, the Trustee requests turnover of custody of the funds on deposit so that he can put them into a trust account that the Debtor has no access to and keep them on deposit while issues pertaining to taxes and Cunning's claim that he has a lien against the funds are resolved. Further, pending the hearing on the Turnover Motion, the Trustee requests that the Court issue an order providing that the restrictions placed on the Debtor by the Stay Order remain in effect, pending further Court order.

IV. **CONCLUSION**

Based on the foregoing, the Trustee requests that the Court enter an order:

(1)     Granting the Motion;

(2)     Scheduling a hearing on the Turnover Motion for as soon as the Court's calendar permits;

(3)     Providing that the restrictions placed on the Debtor by the Stay Order remain in effect pending further order of this Court; and

(4)     Granting such other and further relief as the Court may deem just and appropriate.

Dated: August 31, 2009

WEILAND, GOLDEN
SMILEY, WANG EKVALL & STROK, LLP

By: _Kyra E. Andrassy_
KYRA E. ANDRASSY
Special Counsel for Thomas H. Casey,
Chapter 7 Trustee

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

# DECLARATION OF KYRA E. ANDRASSY

I, Kyra E. Andrassy, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court.  I am Senior Counsel of the law firm of Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, counsel of record for Thomas H. Casey, chapter 7 trustee of the bankruptcy estate of Lloyd Myles Rucker.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached as Exhibit "1" is a true and correct copy of the Memorandum Decision of the Bankruptcy Court entered in September 2006.

3.      Attached as Exhibit "2" is a true and correct copy of the U.S. District Court's Order Granting in Part Motion to Stay that was entered on March 13, 2008.

4.      Attached as Exhibit "3" is a true and correct copy of the Opinion of the Ninth Circuit Court of Appeals that was issued on June 26, 2009.  Attached as Exhibit "4" is the Ninth Circuit's Mandate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 31st day of August, 2009, at Costa Mesa, California.

Kyra E. Andrassy

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION

340528.1

# EXHIBIT 1





**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

In re               )    Case No. SA 06-10195 JR

LLOYD MYLES RUCKER,     )    Chapter 7

                     )    **MEMORANDUM DECISION**

                     )    Date: August 4, 2006

              Debtor.     )    Time: 10:00 A.M.

                     )    Courtroom: 5A

## I.   INTRODUCTION

Ronald Cunning, D.D.S. and Ronald Cunning D.D.S., Inc. (collectively, "Movant") filed an objection to the Lloyd Myles Rucker's ("Debtor") claim of exemption regarding the amounts held in a defined benefit pension plan and multiple 401(k) plans. Debtor responded, defending the propriety of his exemptions. An evidentiary hearing was conducted on June 29, July 5, July 21, and August 4, 2006, and I took the matter under submission to determine whether Debtor used his various retirement plans "primarily for retirement purposes".

## II. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).[1]

## III. STATEMENT OF FACTS

On October 12, 2005 (the "Petition Date"), Debtor filed a voluntary chapter 7 petition in the Southern District of Florida. On February 24, 2006, Debtor's case was transferred to the Central District of California. Thomas H. Casey is the duly appointed chapter 7 trustee ("Trustee").

Prior to the Petition Date, Movant obtained a civil judgment in the amount of approximately $3.2 million (the "Judgment"). On May 15, 1997, Movant recorded an abstract of judgment to secure the amount owed, which is currently more than $6.5 million.

In 2001, Debtor engaged the Kagan Company ("Kagan"), an enrolled actuary,[2] to set up and administer a qualified defined benefit plan, the Lloyd Rucker Defined Benefit Pension Plan (the "Pension Plan").[3] The Pension Plan was notably aggressive,

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101-1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act"), Pub. L. 109-8, 119 Stat. 23, because this case was filed before the Act's effective date (October 17, 2005), and to the Federal Rules of Bankruptcy Procedure (the "Rules"), Rules 1001-9036.

[2] An enrolled actuary is an actuary who has been admitted to practice before the Internal Revenue Service, typically, by passing an exam.

[3] A retirement plan is "qualified" and therefore, entitled to favorable tax treatment, if it complies with the requirements

2

providing for the maximum benefit of $1.8 million by the age of 55 with contributions over a 10-year period. Debtor's wholly-owned company, Vision Capital, Inc. ("Vision"), is the administrator of the Pension Plan. Secure Capital, Inc. ("Secure"), another company wholly owned by Debtor, is a participating employer in the Pension Plan. Debtor was the sole participant in the Pension Plan.

From 2001 through 2005, Kagan calculated and communicated to Debtor the minimum and maximum contributions that could be made to the Pension Plan each year.[4] Debtor provided Kagan with documentation substantiating the amount of contributions he made to the Pension Plan. Based on this information, Kagan prepared an annual return and actuarial report for Debtor to sign and file.[5]

---

established by the Internal Revenue Code. See 26 U.S.C. § 401(a).

[4] A plan must not provide for benefits or contributions that exceed the limitations established by § 415. Id. § 401(a)(16). Specifically, § 415 limits the amount payable as a benefit. Id. § 415(b). In contrast, § 412 sets a minimum funding standard designed to ensure that a qualified pension plan has the assets necessary to pay its beneficiaries the promised benefit. Id. § 412. Taken together, §§ 415 and 412 establish complex formulas for ensuring that an employer does not over fund or under fund a qualified pension plan.

[5] The Internal Revenue Code establishes a variety of reporting requirements and penalties to promote transparency and prevent abuse. Every employer who maintains a qualified pension plan must file an annual return containing information with respect to the "qualification, financial condition, and operations of the plan . . . ." Id. 6058(a). "The annual return is one of several reports the administrator of an employee benefit plan must file with the [IRS]." 6 MERTENS LAW OF FED. INCOME TAX'N § 25B-1:30. "The forms and schedules of the Form 5500

3

On October 15, 2004,[6] Debtor filed a Form 5500EZ for the year 2003. In that report, Debtor declared under penalty of perjury that the Pension Plan received a total of $83,170 in cash contributions during the 2003 plan year.[7] In addition, Debtor disclosed in the 2003 annual return that the value of the Pension Plan assets was $447,507 by year end.

In June 2005, Movant sought and obtained a temporary restraining order, alleging that Secure, Vision, and the Pension Plan were the alter egos and/or assets of Debtor. Due to Movant's allegations regarding the propriety of the Pension Plan, Debtor disclosed to Kagan that, as of the end of 2004, the value of the Pension Plan assets was $710,963. Kagan noticed that the Pension Plan assets were unusually high and requested that Debtor provide additional documentation regarding the Pension Plan's administration. Debtor provided evidence that he contributed $148,658 more to the Pension Plan during 2003 than he had previously reported. Therefore, Debtor's 2003 Form 5500EZ substantially misrepresented the actual contributions to the Pension Plan for that year.

---

series satisfy the annual reporting requirements . . . ." Id. Moreover, the plan administrator must file an actuarial report prepared and signed by an enrolled actuary certifying, among other things, that the plan satisfies the minimum funding requirements. 26 U.S.C. § 6059.

[6] According to Kagan, the filing deadline for any given year was October 15 of the succeeding year.

[7] The $83,170 consisted of contributions made on January 8 and 11 and September 15, 2004. According to Kagan, the contribution deadline for any given year was September 15 of the succeeding year. Therefore, Debtor could count contributions made by September 15, 2004 towards 2003.

4

As a result, Kagan prepared a revised 2003 Form 5500EZ and a 2004 Form 5500EZ. Kagan removed the $83,170 in contributions originally reported in the 2003 Form 5500EZ and included it in the contributions reported in 2004. The revised 2003 Form 5500EZ disclosed that Debtor contributed $148,658 to the Pension Plan for 2003, $48,262 over the funding limit.[8] The 2004 Form 5500EZ disclosed that Debtor contributed $183,170 to the Pension Plan that year, $85,986 over the funding limits. Therefore, the total over funding for 2003 and 2004 was $134,248. The revised 2003 Form 5500EZ and the 2004 Form 5500EZ were filed in late July 2005. Around this same time, Debtor filed excise tax returns on behalf of Vision and paid from his personal funds the excise taxes charged to Vision for the excess contributions in 2003 and 2004.[9]

Debtor also disclosed to Kagan that, in 2003, he caused the Pension Plan to purchase real property located at 21 Saraceno, Newport Coast, California (the "Property") and that he resided at the Property rent free. The Property was sold approximately six months after its purchase, on January 2, 2004. The Pension Plan's ownership of the Property was not disclosed in Debtor's

---

[8] Kagan calculated that the 2003 funding limit was $100,396.

[9] Section 404 establishes the amount of contributions made to a pension plan that an employer may deduct from its taxable income. Id. § 404(a)(1). Any amount contributed in excess of the deductible limitations established by § 404 may be carried over to the succeeding year. Id. § 404(a)(1)(F). However, § 4972 imposes a ten percent tax on any non-deductible contributions made to a qualified plan payable by the *employer* making the contributions.

original or revised 2003 annual report. Kagan advised Debtor that his residing at the Property rent free was a "prohibited transaction" under the Internal Revenue Code. As a result, Debtor allocated $15,600 of $100,000 previously contributed to the Pension Plan by EZ Equity, another of Debtor's wholly-owned corporations, as rent for residing at the Property, and filed an excise tax return on behalf of Vision and paid the excise tax on the prohibited transaction.

In 2001, Debtor also established six separate 401(k) plans, two for each of Debtor's wholly-owned corporations, Vision (the "Vision Plans"), Secure (the "Secure Plans"), and EZ Equity (the "EZ Equity Plans"; collectively, the "401(k) Plans"). Specifically, Debtor established three profit-sharing 401(k) plans through Paychex for Vision (the "Vision Plan"), Secure (the "Secure Plan"), and EZ Equity (the "EZ Equity Plan"), and three "super simplified" 401(k) plans through Smith Barney for Vision (the "Super Vision Plan"), Secure (the "Super Secure Plan"), and EZ Equity (the "Super EZ Equity Plan"). Subsequently, Debtor rolled over the Secure and Vision Plans into the Super EZ Equity Plan.[10]

From 2002 to 2004, Debtor consistently over funded the Secure and Vision Plans. Specifically, in 2002, Debtor contributed $35,810 to the Vision Plan and $11,000 to the Secure

---

[10] In 2004, Debtor rolled over the Vision Plan to the Vision Super Plan, and then rolled over the Vision Super Plan to the Secure Super Plan. In 2005, Debtor rolled over the Super Secure Plan and the Secure Plan to the Super EZ Equity Plan.

6

1    Plan, $6,810 over the contribution limit for that year.[11]  In

2    2003, Debtor contributed $70,741 to the Secure and Vision Plans,

3    $30,741 over the annual contribution limit,[12] and $58,041 more

4    than disclosed in the annual reports filed for that year.[13]

5    Finally, in 2004, Debtor contributed $115,832 to the Secure

6    Plan, $74,832 over the annual contribution limit,[14] and $102,832

7

8        [11] A 401(k) plan is a type of defined contribution plan.
     The Internal Revenue Code places two independent limitations on
9    contributions to 401(k) plans.  First, § 415 limits the amount of
     total contributions, including employer and employee
10   contributions, per year.  26 U.S.C. § 415(c).  Second, § 402
     limits the amount that an employee may elect to contribute to his
11   or her 401(k) plan per year, commonly referred to as an "elective
     deferral".  Id. § 402(g)(3).  For purposes of applying the annual
12   contribution limitations of § 415(c) "all defined contribution
     plans . . . of an employer are to be treated as one defined
13   contribution plan."  Id. § 415(f); see also id. § 401(a)(30).
     Furthermore, a group of corporations controlled by a single
14   entity or individual are treated as a single employer.  Id. §
     412(b).  In 2002, the elective deferral limit was $11,000 and the
15   total contribution limit was $40,000.

16
        [12] The total contribution limit for 2003 was $40,000, of
17   which $12,000 could be elective deferrals.  Debtor contributed
     $12,000 as an elective deferral to the Vision Plan and $21,650 as
18   an employer contribution to the Super Vision Plan.  In addition,
     Debtor contributed $12,000 as an elective deferral to the Secure
19   Plan and $25,091 as an employer contribution to the Secure Super
     Plan.
20
        [13] Debtor filed an annual report for the Secure Plan,
21   disclosing only $12,000 in employee contributions.  Debtor did
     not file an annual report disclosing the $25,091 contributed to
22   the Super Secure Plan or the $33,650 contributed to the Vision
     Plans.
23
        [14] The total contribution limit for 2004 was $41,000, of
24   which $13,000 could be elective deferrals.  Debtor contributed
     $13,225 as an elective deferral to the Secure Plan and $102,607
25   as an employer contribution to the Super Secure Plan.  Debtor
     asserts that the $13,225 contributed to the Secure Plan was
26   offset by a $22,768.22 distribution from the same.  However, a

27

28

more than disclosed in the annual reports filed for that year.[15]
Therefore, by 2004, Debtor over contributed to the 401(k) Plans
by $112,383.

As of the Petition Date, the EZ Equity Plan had a balance
of $16,554, the Super EZ Equity Plan had a balance of $339,566,
and the Pension Plan had a balance of $823,000.  Debtor claimed
the amounts held in the EZ Equity Plans and the Pension Plan as
fully exempt pursuant to California Code of Civil Procedure
("CCP") § 704.115(b) (collectively, the "Exemption").

On April 14, 2006, Movant filed an objection to the
Exemption (the "Objection").[16]  Movant argued that Debtor was not
entitled to claim either the amounts held in the Pension Plan or
the EZ Equity Plans pursuant to § 704.115(b) because they were
not designed or primarily used for retirement purposes.  Debtor
responded, arguing that he treated the Pension Plan and the
401(k) Plans in a manner consistent with planning for
retirement.  Specifically, Debtor argued that his pattern of
contributions were dictated by the sporadic nature of his income
and his lack of retirement planning prior to 2001.  After

distribution from a 401(k) plan is a taxable event that does not
affect a statutory contribution limit for a given year.  See
generally 26 U.S.C. § 402(g).

[15] Debtor filed annual report for the Secure Plan,
disclosing only $13,000 in employee contributions.  Debtor did
not file an annual report disclosing the $102,607 contributed to
the Super Secure Plan.

[16] Movant also objected to the exemption claimed by Debtor
in real property located at 14 Vernal Spring, Irvine, CA and
accrued but not received salary from EZ Equity.  However, in
response to the Objection, Debtor conceded that he was not
entitled to either of those exemptions.

evidentiary hearings conducted on June 29, July 5, July 21, and August 4, 2006, I took the matter under submission to determine whether Debtor used his various retirement plans "primarily for retirement purposes".

## IV. DISCUSSION

Section 704.115(a) defines a "private retirement plan" to mean:

> (1) Private retirement plans, including, but not limited to, union retirement plans.
> (2) Profit-sharing plans designed and used for retirement purposes.
> (3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986, as amended, including individual retirement accounts qualified under Section 408 or 408A of that code, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

CAL. CIV. PROC. CODE § 704.115. Section 704.115 provides a full exemption for "private retirement plans" and a partial exemption for "self-employed retirement plans". See CAL. CIV. PROC. CODE §§ 704.115(a), (b) & (e); see also In re Cheng, 943 F.2d 1114, 1115 (9th Cir. 1991).

According to the Ninth Circuit, retirement benefit plans established by a corporation solely owned by a debtor constitute fully exempt "private retirement plans," as opposed to partially exempt "self-employed retirement plans." In re Cheng, 943 F.2d at 1117. Nevertheless, for a plan to fit within the ambit of CCP § 704.115 it must *be designed and primarily used for retirement purposes.* In re Kim, 257 B.R. 680, 685 (9th Cir. BAP 2000); see also In re Bloom, 839 F.2d 1376, 1378 (9th Cir.

9

1988); _In re Jacoway_, 255 B.R. 234, 239 (9th Cir. BAP 2000). In

determining whether a plan has been used primarily for

retirement purposes, all factors are relevant. _In re Jacoway_,

255 B.R. at 239. Courts have considered such factors as

> [1.] whether withdrawals or loans were made
> following the procedures set out in the
> plan, [2.] whether the debtor used the plan
> to hide otherwise ineligible assets from
> bankruptcy administration, or from
> creditors, [3.] whether the withdrawals or
> loans benefitted the plan's retirement
> purpose by preserving and enhancing the
> capital of the plan, and [4.] whether any
> withdrawals diminished or will diminish the
> assets in the plan to such an extent that
> they are inconsistent with the majority of
> the assets being used for long-term
> retirement purposes.

_Id._ at 239-40 (internal citations and quotations omitted).

Moreover, while noncompliance with the terms of the plan and/or

the Internal Revenue Code is not determinative, it does support

a finding that the plan is not being used primarily for

retirement purposes. See _id._ at 240 n.5.

Here, Debtor excessively contributed to the Pension Plan

beyond the already aggressive limits calculated by Kagan in

accordance with the Internal Revenue Code. More importantly,

Debtor's excessive contributions were willful. Each year, Kagan

communicated to Debtor the maximum that he could contribute to

the Pension Plan. Nonetheless, in 2003, Debtor contributed

$231,828.30 to the Pension Plan, $131,432 over the funding

limit.[17] By the end of 2004, Debtor had over funded the Pension

---

[17] While Kagan reduced this excess contribution to $48,262
by counting approximately $83,000 towards 2004, the fact remains
that Debtor contributed more than double the 2003 funding limits.

Plan by $134,248.

Debtor testified that the amount and timing of the contributions to the Pension Plan were dictated by the availability of funds. Debtor further testified that, as a mortgage broker, his income fluctuates and that he was merely pre-funding the Pension Plan for future years.

Debtor lacks credibility. Debtor repeatedly failed to disclose the excess contributions that he made to the Pension Plan. In 2003, Debtor contributed $148,658.30 more to the Pension Plan than he originally reported. Moreover, Debtor failed to disclose that the Pension Plan had purchased the Property, and that he resided at the Property rent free. It was not until Movant raised questions as to the propriety of the Pension Plan that Debtor fully disclosed the amount of contributions, disclosed the purchase of the Property, and paid from his personal funds the excise taxes owed by Vision and Secure on the excess contributions.

Debtor's treatment of the 401(k) Plans was even more egregious. Debtor created six different 401(k) plans, two through each of his wholly-owned corporations. Debtor contributed to the 401(k) plans with complete disregard of the multiple contribution limitations and reporting requirements established by the Internal Revenue Code. By 2004, Debtor over contributed to the 401(k) Plans by $112,383. Moreover, between 2002 and 2004, Debtor contributed $161,572 more to the 401(k) Plans than reported in the mandatory annual reports.

In short, Debtor systematically stuffed the Pension Plan and 401(k) Plans in excess of the legal limits. Moreover,

11

Debtor repeatedly failed to accurately disclose the
contributions made to the plans.[18]  The Internal Revenue Code
creates a system of funding limits, public reporting
requirements, and penalties to promote public scrutiny and
prevent abuse.  See H.R. REP. NO. 93-533, pt. 4639, at 4649
(1974); see also H.R. REP. NO. 93-807, pt. 4670, at 4673 (1974).
Debtor completely disregarded these limits and reporting
requirements with the primary intent of frustrating Movant's
collection efforts by hiding these funds.  Debtor consistently
broke the rules to accomplish this goal.  Movant presented
substantial evidence demonstrating a pattern of lying,
misrepresentations, and questionable transactions designed to
frustrate his efforts to collect on the Judgment.  The setting
up of the Pension Plan and the 401(k) Plans and the excessive
funding are part of Debtor's overall effort not to pay one cent
on the Judgment.  When asked about payment on the Judgment,
Debtor responded "it is a black hole."

Therefore, based on all the facts and circumstances, I find
that Debtor set up and funded the Pension Plan and 401(k) Plans
primarily to shield and hide assets from Movant and not for
retirement purposes.

---

[18] Debtor attempted to pass the blame for his failure to
accurately disclose the contributions that he made to the Pension
Plan and the 401(k) Plans to his accountant, Jon Lavine
("Lavine"), and Kagan.  However, the annual reports were prepared
based on information Debtor provided to Kagan.  Moreover, Debtor
signed the annual reports under penalty of perjury.  Therefore,
the blame for failing to timely file accurate annual reports lies
with Debtor.

12

## V. CONCLUSION

Debtor knowingly and excessively over funded the Pension Plan and the 401(k) Plans. Moreover, Debtor repeatedly under-reported or failed to report the amounts contributed to the Plans. Therefore, I conclude that the Pension Plan and 401(k) Plans were not set up and funded primarily for retirement purposes, but rather to improperly shield and hide assets to frustrate Movant's efforts to collect on the Judgment.

Accordingly, Movant's objection to the Exemption is sustained. This memorandum decision shall constitute my findings of fact and conclusions of law.

Dated: September 22, 2006,

JOHN E. RYAN
United States Bankruptcy Judge

13

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

In re                            )    Case No. SA 06-10195 JR
                                 )
LLOYD MYLES RUCKER,              )    NOTICE OF ENTRY OF ORDER
                                 )
                    Debtor.      )
                                 )

TO:

OFFICE OF THE UNITED STATES TRUSTEE
411 WEST FOURTH STREET
SANTA ANA, CA 92701-8000

EVAN SMILEY
WEILAND, GOLDEN, SMILEY, WANG EKVALL & STROK, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

JAMES BASTIAN
SHULMAN HODGES & BASTIAN LLP
26632 Towne Centre Drive, Suite 300
Foothill Ranch, CA 92610

LLOYD MYLES RUCKER
110 Washington Ave #1724
Miami Beach, FL 33139

THOMAS H. CASEY
22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, CA 92688

        You are hereby notified, pursuant to Bankruptcy Rule 7055
and 9022 that a judgment or order entitled MEMORANDUM DECISION
and ORDER SUSTAINING THE OBJECTION TO DEBTOR'S CLAIM OF OBJECTION
was entered on ___SEP 2 2 2006___.

        I hereby certify that I mailed a copy of this notice to the
above-named persons on ___SEP 2 2 2006___.

Dated:  SEP 2 2 2006

                                 JON D. CERETTO

                          By     _____
                                 Deputy Clerk

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-01022 MMM | Date | March 13, 2008 |
| | Bncky: SA06-10195 JR | | |

Title    *In re Lloyd Myles Rucker*

Present: The Honorable    MARGARET M. MORROW

| | |
|---|---|
| ANEL HUERTA | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

Proceedings:    **Order Granting *Ex Parte* Application to Shorten Time for Hearing; Granting in Part Motion to Stay**

### 1.    Introduction

On March 10, 2008, appellees Ronald A. Cunning, D.D.S. and Ronald Cunning, D.D.S., Inc. ("creditors") filed an *ex parte* application for stay pending appeal. Creditors ask that the court stay enforcement of its March 3, 2008 order, which reversed an earlier bankruptcy court ruling sustaining creditors' objection to Lloyd Myles Rucker's ("debtor") claim that his defined benefit pension plan and multiple 401(k) plans were exempt under California Code of Civil Procedure § 704.115.[1] Creditors assert that on November 14, 2006, the bankruptcy court granted debtor's request for a stay of their enforcement of the underlying bankruptcy court decision pending appeal to this court.[2] The bankruptcy court prohibited debtor, creditors, the bankruptcy trustees, and other parties from withdrawing any part of the retirement funds that are at issue while the appeal to this court was pending.[3] Because the appeal has been decided and the has court determined that debtor's retirement plans are exempt, creditors believe

---

[1]See Appellees' Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8017(b) ("Appellees' Mot.") at 1-2.

[2]*Id.* at 2, Exh. 1.

[3]*Id.*, Exh. 1.

that debtor will access and dissipate the funds on deposit in the retirement accounts.[4] Creditors note that under Rule 8017(a) of the Federal Rules of Bankruptcy Procedure, district court judgments automatically stayed for ten days after entry. See FED. R. BANKR. PROC. 8017(a). Because this period expires today, creditors assert that debtor can access the funds and the bankruptcy estate will be irreparably harmed.[5] For this reason, creditors seek *ex parte* relief.

### 2.    Standard for Granting a Stay Pending Appeal

Under Rule 8017(b), the district court may stay its judgment pending an appeal to the court of appeals. See FED. R. BANKR. PROC. 8017(b).[6] A court in this district recently held:

> "When considering whether to issue a stay pending appeal, the district court must consider the following factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' *Hilton v. Braunskill*, 481 U.S. 770, 776 . . . (1987); *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986); FED.R.CIV.P. 62(c). Alternatively, the court may grant a stay if the party seeking the stay 'demonstrates . . . that serious questions are raised and the balance of hardships tips sharply in his favor.' *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006)." *Natural Resources Defense Counsel v. Winter*, 527 F.Supp.2d 1216 (C.D. Cal. 2008).

As can be seen, "[t]he standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Indeed, in *Lopez*, the Ninth Circuit made reference to the "two interrelated legal tests for the issuance of a preliminary injunction," and applied those tests in deciding whether a stay

---

[4]*Id.* at 3.

[5]*Id.* at 3-4.

[6]Rule 8017(b) provides in full:
"On motion and notice to the parties to the appeal, the district court or the bankruptcy appellate panel may stay its judgment pending an appeal to the court of appeals. The stay shall not extend beyond 30 days after the entry of the judgment of the district court or the bankruptcy appellate panel unless the period is extended for cause shown. If before the expiration of a stay entered pursuant to this subdivision there is an appeal to the court of appeals by the party who obtained the stay, the stay shall continue until final disposition by the court of appeals. A bond or other security may be required as a condition to the grant or continuation of a stay of the judgment. A bond or other security may be required if a trustee obtains a stay but a bond or security shall not be required if a stay is obtained by the United States or an officer or agency thereof or at the direction of any department of the Government of the United States." FED. R. BANKR. PROC. 8017(b).

should issue. *Id.*[7]

### 3.    Likelihood of Success on the Merits

For the reasons stated in its order reversing the bankruptcy court's ruling, the court concludes that creditors have failed to demonstrate both that they are reasonably likely to succeed on the merits or that there are serious legal questions going to the merits of their claim that would justify a stay. Creditors argue that the court did not consider "substantial other evidence" that the debtor failed to comply with Internal Revenue Code provisions governing the handling of the plans.[8] They also argue that the court did not consider other evidence related to debtor's attempts to put his assets beyond creditors' reach.[9]

The court considered, but found not relevant, the additional evidence of debtor's purported noncompliance with the Internal Revenue Code (the "IRC"), as creditors were unable to cite any authority indicating that debtor's overall noncompliance with regulations governing the administration of a plan was pertinent in assessing whether the plans were designed and used primarily for retirement purposes. The cases cited by creditors – e.g., *In re Jacoway*, 255 B.R. 234, 237 (9th Cir. B.A.P. 2000), and *In re Bloom*, 839 F.2d 1376, 1378 (9th Cir. 1988) – addressed noncompliance with IRC regulations governing loans and withdrawals from a plan.[10]  As there was no allegation of improper loans or withdrawals by debtor, but rather allegations regarding improper *contributions* to the plan, the court was not persuaded that the type of noncompliance cited compelled or supported a finding that the plan was not exempt.

The court did not consider evidence of debtor's purported attempts to hide assets that did not involve the creation and administration of the pension plan and the 401(k) plans because the evidence was

---

[7]The two tests are a continuum: "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. [citation omitted] At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Lopez*, 713 F.2d at 1435.

[8]Appellees' Mot. at 5.

[9]*Id.* at 6.

[10]Creditors also argue that the court failed to consider the fact that the debtor lived in real property owned by the defined benefit pension plan for approximately six months in 2003 without paying $15,600 in rent.  This constituted a "prohibited transaction" under the Internal Revenue Code, which was not corrected until August 2005.  Although recited in the court's findings of fact, the bankruptcy court did not appear to rely on this fact in concluding that the benefit pension plan was not designed and used primarily for retirement purposes.  To the extent that the bankruptcy court did rely on this fact, however, a single prohibited transaction is legally inadequate to disqualify debtor from taking advantage of the exemption provided by § 704.115. The debtor reported that the pension plan assets had a value as of the end of 2003 of approximately $450,000.  The amount of unpaid rent is approximately 3.5 percent of the total reported value of the plan.  This does not – under Ninth Circuit precedent – demonstrate that the plan "was so abused as to lose [its] retirement purpose." *Bloom*, 839 F.2d at 1379.

3

outside the scope the court's review. Although the court must consider the totality of the circumstances in determining whether a plan was designed and used primarily for retirement purposes, its review is limited to the manner in which the debtor treated the private retirement plan and its assets, not his pre-petition behavior in general. See *Schwartzman v. Wilshinsky*, 50 Cal.App.4th 619, 629 (1996) ("Nor is there evidence that appellant used the account to hide assets, an inference respondent would have us draw from the fact that appellant made a large gift to his children's trust. While one might infer that the children's trust is being used for an improper purpose, it does not follow that the [retirement] plan has been used to hide 'ineligible' assets. . . . There is nothing in [§ 704.511] . . . which would permit denial of an exemption on the ground that *unrelated* funds are ineligible and have been fraudulently transferred" (emphasis original)); see also *In re Witwer*, 148 B.R. 930, 941 (Bankr. C.D. Cal. 1992), aff'd, 163 B.R. 614 (9th Cir. B.A.P. 1994) (Table) (noting that the California legislature's decision in § 704.115 to "entirely safeguard a stream of [retirement] income for pensioners at the expense of a bankrupt's creditors may be an invitation for debtors to engage in pre-petition exemption planning"). The court therefore concluded that creditors' evidence of debtor's other activities, even if probative of efforts to hide assets, did not demonstrate that debtor's defined benefit pension plan and multiple 401(k) plans were not designed and used primarily for retirement.

Creditors now argue that the court should have considered evidence of debtor's attempts to hide unrelated funds pursuant to the California Court of Appeal's decision in *Yaesu Electronics Corp. v. Tamura*, 28 Cal.App.4th 8 (1994). There, following entry of a $2.2 million judgment against him, defendant Tamura conveyed to his sons more than $200,000 in funds that had been derived from a defined benefit pension plan. *Tamura*, 28 Cal.App.4th at 11. The trial court set the transfer aside as fraudulent after determining that the funds were not exempt from liability because the pension plan from which they had been derived had not been established to provide for Tamura's retirement. *Id.* at 12-13. The trial court looked at the fact that Tamura revealed in his deposition and judgment debtor's exam that he had established the plan to provide for his children, not for retirement. *Id.* at 13. It also found that this evidence was corroborated by the fact that Tamura, who had been retired for several years at the time of the trial, never actually used the funds for retirement, but rather spent a portion and gave the balance to his sons. *Id.*

The court of appeals affirmed the trial court's findings that the plan was not designed primarily for retirement purposes, and therefore that the conveyance to Tamura's sons was fraudulent. It noted that "the dispositive inquiry for the trial court . . . was whether Tamura had designed and used the YMT Plan for retirement purposes." *Id.* at 14. It then observed that the trial court's finding was "supported by substantial evidence" because

> "[i]n his testimony at the debtor's examination, Tamura admitted that he had never had a retirement account. He conceded that his purpose in establishing the YMT Plan was not to save money to use in his retirement but to take advantage of the tax laws and to save money for his children. Other than his uncorroborated testimony that he used the dividends from the Nuveen Account for living expenses, there was no evidence that Tamura, who had retired and not worked since 1985, used the money from the plan for his retirement." *Id.*

The court also noted that "circumstantial evidence" demonstrated that the plan was not truly a retirement plan. *Id.* It looked to the fact that Tamura had liquidated the funds and made gifts to his sons

4

one month after the return of jury verdicts against him. *Id.* at 14-15. It also cited the fact that "[a]lthough in the course of that trial Tamura had stipulated his worth exceeded $1 million, he immediately began to borrow money from his relatives (including his son Alvin Tamura) and to encumber his remaining assets." *Id.* The court reasoned that "[t]his chronology strongly suggests that Tamura did not consider the proceeds of the YMT Plan a source of retirement income but instead viewed the money as one of his many assets which would be subject to execution by Yaesu and which he therefore intended to conceal from Yaesu." *Id.* at 15.

Creditors argue *Tamura* demonstrates that it is appropriate for a court to consider "circumstantial evidence" as additional proof in evaluating whether a retirement plan was designed and used primarily for retirement.[11] It contends that this contrasts with *Schwartzman's* holding that additional evidence of hiding assets is irrelevant in determining whether a plan qualifies for the § 704.115 exemption. As a result, creditors maintain, they are likely to succeed on the merits of their appeal because they will argue that the court should have considered additional evidence that debtor has hidden assets under the Ninth Circuit's test that "[a]ll factors are relevant; but no one is dispositive."[12] See *Bloom*, 839 F.2d at 1379.

The court does not believe that creditors are likely to succeed on the merits of this argument before the Ninth Circuit. While the court in *Tamura* mentioned circumstantial evidence, it was not central to its decision and appears merely to have cumulative to debtor's admission that he had not created the plan for retirement purposes. There is no indication, moreover, that the trial court considered or relied on the circumstantial evidence in making its initial finding. The *Tamura* court correctly noted that "the dispositive inquiry for the trial court . . . was whether Tamura had designed and used the YMT Plan for retirement purposes." *Id.* at 14. Its decision to affirm the trial court's finding rested on Tamura's admissions and not on the circumstantial evidence adduced by the judgment creditor. In *Schwartzman*, by contrast, the case on which this court relied in declining to draw inferences from circumstantial evidence, the California Court of Appeals squarely addressed the propriety of considering such evidence. There, like here, the creditor argued that the court should infer that the debtor's 401K plan was not primarily designed and used for retirement purposes because the debtor had engaged in other conduct suggesting concealment of assets. As noted, the *Schwartzman* court rejected this argument, holding that "[t]here is nothing in the statute [ ] which would permit denial of an exemption on the ground that *unrelated* funds are ineligible and have been fraudulently transferred." *Schwartzman*, 50 Cal.App.4th at 629 (emphasis original). Because *Schwartzman* directly addressed this issue and determined that circumstantial evidence should not be considered, and because any consideration of such evidence in *Tamura* was tangential at best, the court is unpersuaded by creditors' argument that the court of appeals is likely to find otherwise.

Creditors also contend they will argue on appeal that "just as noncompliance with [IRC] regulations regarding loans and withdrawals may tend to indicate that a plan was not being used for retirement purposes . . . , noncompliance with regulations regarding contributions may similarly indicate a non-retirement purpose because it can be probative of whether the judgment debtor's primary intention in designing and using a plan is to hide and shield assets from creditors and not to plan for retirement."

---

[11] *Id.*

[12] Appellees' Mot. at 6.

5

26

The cite no authority for this proposition, however; as a result, the court is unable to conclude that they are likely to succeed on the merits.

### 4.    Debtor's Stipulation to a "Partial" Stay Pending Appeal

While creditors have not shown that they are likely to succeed on the merits of their appeal, they have made a plausible argument that they will be harmed if debtor is given unfettered access to the retirement funds. Debtor, moreover, has effectively stipulated to a "partial" stay of the court's order. Specifically, debtor states that he does not oppose entry of an order (1) prohibiting him from accessing and dissipating the Plan's funds during the pendency of an appeal to the Ninth Circuit, so long as (2) debtor may consolidate the funds with a single fund manager who has done the best job of preserving and enhancing assets, and reallocate the funds among different investment products to preserve their value.[13] Coupled with creditors' showing of harm, debtor's willingness to stipulate to a limited stay indicates that entry of such an order is appropriate.

Creditors do not address debtor's proposal or state any particular objection to such an arrangement in their motion for stay. They seek a stay primarily because they contend there is a "very real risk that the funds and assets of the Plans will be dissipated" before the Ninth Circuit is able to decide their appeal.[14] Under debtor's proposal, he would be prohibited from dissipating the funds, but would be allowed to avoid a loss of value in the funds by reinvesting in more successful products. Because the proposed stay appears to address the concerns of both parties, the court will grant in part creditor's *ex parte* motion for a stay pending appeal.

### 5.    Conclusion

For the reasons stated, the court grants in part creditors' motion for a stay pending appeal under Rule 8017(b) of the Federal Rule of Bankruptcy Procedure. Debtor is prohibited from accessing and dissipating Plan assets at issue during the pendency of creditors' appeal to the Ninth Circuit. The only exception to this is that debtor may consolidate the funds with a single fund manager and reallocate the funds among different investment products to preserve their value.

---

[13]See Appellant's Opposition to Appellee's Motion for an Order Staying Judgment Pending Appeal to the Ninth Circuit ("Appellant's Opp.") at 2. Debtor indicates that the parties discussed such a stipulation prior to the filing of creditors' motion, but were unable to reach agreement. (Appellant's Supplement to Opposition to Motion for Stay Pending Appeal ("Appellant's Supp.") at 1-2.)

[14]Appellees' Mot. at 8.

# EXHIBIT 3

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: LLOYD MYLES
RUCKER,
                                    *Debtor,*

RONALD A. CUNNING,
                                    *Appellant,*

v.

LLOYD MYLES RUCKER,
                                    *Appellee.*

No. 08-55652
D.C. No.
8:06-cv-01022-
MMM

In the Matter of: LLOYD MYLES
RUCKER,
                                    *Debtor,*

LLOYD MYLES RUCKER,
        *Appellee-Cross-Appellant,*

v.

RONALD A. CUNNING,
        *Appellant-Cross-Appellee.*

No. 08-55655
D.C. No.
8:06-cv-01022-
MMM

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
May 8, 2009—Pasadena, California

Filed June 26, 2009

8053

8054            IN THE MATTER OF RUCKER

Before: Betty B. Fletcher, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Kyra E. Andrassy, Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP, Costa Mesa, California, for the appellants/cross-
appellees.

Mark Bradshaw and Evan D. Smiley, Shulman Hodges & Bastian LLP, Foothill Ranch, California, for the appellee/cross-appellant.

---

## OPINION

GOULD, Circuit Judge:

Facing a civil judgment debt of more than $6.5 million, Lloyd Myles Rucker declared bankruptcy and tried to exempt his assets as belonging to private retirement plans under California Civil Procedure Code ("CPC") § 704.115. Rucker had previously placed the assets in pension and 401(k) plans funded by his wholly owned corporations. The bankruptcy court denied the exemption on the explicit ground that Rucker's retirement plans were not designed and used primarily for retirement purposes. The district court saw it otherwise and reversed this judgment. We conclude, after considering the totality of the circumstances, that the bankruptcy court's prior decision was not clear error, and we therefore reverse the district court. Because the applicable law was not free from doubt, we elaborate our reasons for disagreement with the district court's assessment.

### I

In 1997 Ronald Cunning and Ronald Cunning D.D.S., Inc. (collectively "Cunning"), obtained a civil judgment against Rucker for $3.2 million. Rucker served 30 months in jail for his criminally fraudulent conduct that gave rise to the judgment. *See United States v. Rucker*, 132 F.3d 41 (9th Cir. 1997) (unpublished); *United States v. Rucker*, 107 F.3d 18 (9th Cir. 1996) (unpublished). With interest, Rucker now owes more than $6.5 million to Cunning on the judgment.

In 2001 Rucker established the Lloyd Rucker Defined Benefit Pension Plan (the "Pension Plan") and several 401(k)

plans (the "401(k) Plans"). The Plans were associated with three of Rucker's wholly owned corporations (the "Controlled Corporations"), and Rucker was the sole employee beneficiary of his Plans. From 2001 to 2005 Rucker aggressively funded the Plans both personally and through his Controlled Corporations. In most of these years Rucker wilfully caused the Plans to be "overfunded," in that contributions to them exceeded the annual limits imposed by the Internal Revenue Code. *See* 26 U.S.C. § 401(a)(16) (stating that retirement plans must adhere to contribution limits to earn favorable tax treatment). The overfunding amount was about 20 percent of the total value of the Plans. Also, contributions to the Plans by the Controlled Corporations were markedly substantial in relation to the salaries the corporations paid to Rucker, in some instances exceeding his salary. For example, in 2001 and 2002 the Controlled Corporations contributed at least $30,000 more each year to Rucker's retirement plans than they paid to him in salary. And in 2003 and 2004 Plan contributions were about equal to Rucker's salary.

Rucker's Plan activities quite plainly violated several Internal Revenue Service ("IRS") rules. The bankruptcy court found that Rucker "repeatedly failed to accurately disclose" to the IRS contributions made by the Controlled Corporations. Between 2002 and 2004 Rucker contributed $160,000 more to the 401(k) Plans than he disclosed to the IRS, and in 2003 alone he contributed about $150,000 more to the Pension Plan than he first reported. The record also shows that in 2003 Rucker directed a wholly owned offshore corporation to contribute $120,000 to his Plans via a foreign bank account, even though the offshore corporation was not a plan sponsor permitted to contribute to the Plans. Finally, in 2003 the Pension Plan purchased property on which Rucker lived rent-free for six months. However, the total rental value of the property for that time period constituted less than four percent of the Plan assets. Apart from this relatively small constructive rent payment, Rucker has not borrowed or withdrawn money from his Plans. The general picture is that Rucker disregarded IRS

rules in funding his Plans but that he generally did not withdraw money from his Plans for his personal use.

When Rucker filed for bankruptcy his Plans were worth about $1.2 million. By contrast, Rucker has paid Cunning virtually nothing on the judgment. Rucker has also said that he has no plans to pay any part of the judgment. Rucker explained: "It would be like paying into a black hole."

After Cunning increased his collection efforts in 2005, Rucker filed for Chapter 7 bankruptcy in Florida, but he did not meet the venue requirements and the case was transferred to the Central District of California. In the California federal bankruptcy court, Rucker declared as exempt his assets in all the Plans under CPC § 704.115(b), which exempts "all amounts held, controlled, or in process of distribution by a private retirement plan." Cunning objected to the exemption, claiming that the Plans were not exempt because they were not designed or used primarily for retirement purposes.

After a bench trial, the bankruptcy court sustained Cunning's objection and determined that the Plans were not exempt because Rucker designed and used the Plans primarily to shield his assets from Cunning. Instrumental in the bankruptcy court's reasoning were the facts that Rucker overfunded the Plans, that Rucker took at least one constructive rent payment, and that Rucker did not accurately disclose his contributions as required by IRS regulations. The bankruptcy court also found explicitly that Rucker lacked credibility.[1]

Rucker appealed to the district court, which reversed the

---

[1]Rucker does not challenge the bankruptcy court's adverse credibility finding, possibly because it is supported by voluminous evidence in the record. For example, Rucker first testified that he never used Controlled Corporation funds to pay personal expenses, but then changed his testimony after being presented with evidence of corporate checks used to pay for, among other things, an engagement ring.

bankruptcy court and held that although Rucker may have created the Plans in part to shield assets, he was still entitled to the exemption because the Plans were designed and used primarily for retirement purposes. Cunning appeals the district court's reversal of the bankruptcy court.[2]

The evidence taken together squarely raises the issue of whether a person who funds a retirement plan both for retirement purposes in part and to shelter assets and avoid paying debts in part has acted primarily for retirement purposes. The district court reasoned that if the evidence here showed dual purposes, it nonetheless could not conclude that the funding was primarily to avoid a debt. However, when we look at the totality of circumstances and give deference to the bankruptcy court's factual findings after trial, we come to a different conclusion.

## II

This case turns in part on our assessment of the appropriate

---

[2]By taking this appeal Cunning implicitly contends that we have jurisdiction, even though Cunning has flagged some questions about jurisdiction. The jurisdictional issue arises because, after deciding that Rucker's Plans were designed and used primarily for retirement purposes, the district court remanded to the bankruptcy court to address a separate factual issue that had not been raised by the parties. Rucker urges that we have jurisdiction in an argument framed as a cross-appeal to the district court's remand. It is always our duty to address jurisdictional issues, and so we do so here even though Cunning has invoked our jurisdiction and Rucker agrees to it. *See Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009).

We have jurisdiction over "all final decisions" of the district court, including decisions made in its bankruptcy appellate capacity. 28 U.S.C. § 158(d). Applying a "pragmatic approach in determining finality under § 158(d)," *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 894 (9th Cir. 1992), we conclude that the district court decision was a final, appealable order because the parties never contested and verbally stipulated the factual issue that led to the remand, as Cunning conceded before the bankruptcy court.

standards of review. Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1086 (9th Cir. 2001). We review *de novo* the bankruptcy court's decision on the scope of the exemption for private retirement plans provided by CPC § 704.115. *Dudley v. Anderson (In re Dudley)*, 249 F.3d 1170, 1173 (9th Cir. 2001). However, our precedent establishes that "whether a plan is designed and used for retirement purposes is a question of fact that we review for clear error." *Jacoway v. Wolfe (In re Jacoway)*, 255 B.R. 234, 237 (9th Cir. BAP 2000); *see also Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009) (reviewing for clear error whether the features of a retirement instrument "demonstrate that the product's primary purpose and effect [is] . . . a retirement plan" under CPC § 704.115). Our conclusion that a clear error standard governs review of the bankruptcy court's assessment whether a plan's funding is primarily for retirement purposes is a key factor to our evaluation of the merits of the appeal. The district court erred by applying *de novo* review to the bankruptcy court's factual determination that Rucker's Plans were not designed and used primarily for retirement purposes.[3] Applying the clear error standard, we reach a different conclusion than did the district court, and we reaffirm the bankruptcy court's decision.

---

[3]In determining that *de novo* review applied, the district court relied on *Kim v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000), which held that when facts are not in dispute, the application of law to fact is reviewed *de novo*. Yet, as *Kim* also held, retirement purpose is a factual question. *See id.* ("Whether a plan is designed and used for retirement purposes is a question of fact that the panel reviews for clear error."). That factual issue is hotly disputed here, so we are not reviewing the bankruptcy court's application of law to undisputed facts. Rather, we review the bankruptcy court's factual determination of retirement purpose; clear error review therefore applies.

## III

[1] Rucker claims that his Plan assets are exempt from his bankruptcy estate and beyond Cunning's reach because they fall within CPC § 704.115(b), which exempts "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan."[4] A plan used in part to shield assets is still exempt if it was designed and used primarily *for retirement purposes. Dudley*, 249 F.3d at 1176. We construe CPC § 704.115 "liberally . . . for the benefit of the debtor." *Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1092 (9th Cir. 2001). In fact, "[t]he very purpose of the exemption is to permit a judgment debtor to place funds beyond the reach of creditors, so long as they qualify for the exemption under the law." *Schwartzman v. Wilshinsky*, 50 Cal. App. 4th 619, 629 (Ct. App. 1996).

In deciding whether a plan is designed and used primarily for retirement purposes, "[a]ll factors are relevant; but no one is dispositive." *Bloom v. Robinson (In re Bloom)*, 839 F.2d 1376, 1379 (9th Cir. 1988). Many factors previously considered by us and by California courts concern the extent of a debtor's withdrawals or loans from the plan. *See Jacoway*, 255 B.R. at 239-40 (9th Cir. BAP 2000) (listing nonexhaustive factors considered by courts when evaluating CPC § 704.115(b), most of which relate to plan withdrawals or loans). Courts have also considered a debtor's subjective intent in deciding whether the plans have a retirement purpose. *See Simpson*, 557 F.3d at 1018 (stating that "while the

---

[4]We have previously held that this exemption may apply even to single-employee plans like Rucker's that are established by wholly owned corporations. *See Cheng v. Gill (In re Cheng)*, 943 F.2d 1114, 1117 (9th Cir. 1991) ("We recognize the odd result the statute creates—one-person medical corporations are treated the same as General Motors, creating the opportunity for shareholders of tiny corporations to abuse the exemption scheme—but we may not disregard the statute's language to address problems properly left to the legislature.").

debtor's subjective intent cannot create an exemption, it may take one away").

[2] Because Rucker made no loans or withdrawals from his Plans other than the cited instance of his rent-free use of Plan property, he argues that we should allow the retirement plan exemption. His argument is not frivolous. We are not aware of any California or federal court in a published opinion denying an exemption under CPC § 704.115 in circumstances where the debtor made no significant withdrawals or loans from the plan. At the same time, however, we are also aware of no precedent stating that the lack of withdrawals or loans in itself conclusively establishes a primary retirement purpose. Instead, applicable precedent requires that we consider all the circumstances to determine whether Rucker's Plans were designed and used primarily for retirement purposes. *See Bloom*, 839 F.2d at 1379-80 ("All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry—whether the plan was designed and used for a retirement purpose."). At the outset, we answer Rucker's argument by holding that the absence of loans or withdrawals from a private retirement plan, while significant, does not in itself guarantee that the plan was designed and used primarily for retirement under CPC § 704.115. Instead, a careful assessment of the totality of circumstances is the substantive standard governing our decision, and this standard may be applied absent any withdrawals of or loans from the disputed funds.

We conclude that the bankruptcy court did not commit clear error in determining that Rucker used his Plans primarily to hide assets from Cunning, and not primarily for retirement. Once we articulate the totality of circumstances standard, and recognize that a bankruptcy court decision on the fact-intensive issue of a retirement plan's primary purpose is reviewed only for clear error, we conclude that the bankruptcy court's initial decision on that issue must be here reaffirmed and the district court's contrary conclusion reversed.

[3] We stress that Rucker engaged in egregious and deceptive conduct in funding his Plans. He consistently funded his Plans in excess of the contribution limits imposed by the Internal Revenue Code,[5] and he repeatedly and wilfully lied to the IRS about the extent of his Plan contributions. Rucker also secretly contributed money to his Plans using a wholly owned offshore corporation and a foreign bank account. Rucker gave no explanation for his misrepresentations or for why anyone with a genuine retirement purpose would under-report the amount of money contributed into a retirement plan or secretly contribute from offshore corporations ineligible to participate in the plan. Rucker's behavior in hiding his contributions and lying to the IRS is more consistent with a primary goal of hiding assets than with a primary purpose of saving for retirement.

[4] Our analysis of other factors further indicates that Rucker's Plans were designed and used primarily to shield assets. Rucker caused his Controlled Corporations in some years to contribute more to his Plans than they paid him in wages. Also, Rucker admits that he intends never to pay another cent of his "black hole" judgment and that his Plan contributions were motivated at least in part by a desire to hide assets. *See Jacoway*, 255 B.R. at 239 (listing "whether the debtor used the plan to hide otherwise ineligible assets . . . from creditors" as a factor in making the "primarily for retirement" determination) (quotation marks omitted). Rucker's expressed goal of shielding his assets from Cunning is yet another factor suggesting that his Plans were not used primarily for retirement purposes. *See Simpson*, 557 F.3d at 1018

---

[5]The district court discounted Rucker's overfunding in part because the case the bankruptcy court cited in considering overfunding, *Jacoway*, 255 B.R. at 240 n.5, mentions only excessive loans and withdrawals, not excessive contributions. Although the district court is correct that *Jacoway* did not address overfunding, this does not mean that courts are prohibited from viewing overfunding as evidence of a non-retirement purpose. The violation of IRS regulations is one factor that impacts our totality of the circumstances analysis.

(holding that courts should consider in a section 704.115 analysis "whether the particular asset, based on the debtor's subjective intent and the product's true nature, demonstrates that it is primarily intended or used for retirement purposes").

[5] In summary, when a court evaluates the totality of the circumstances to determine whether a private retirement plan is designed and used primarily for retirement purposes under CPC § 704.115, "[a]ll factors are relevant," and a court is not limited to considering only those factors previously considered by other California and federal courts. *Bloom*, 839 F.2d at 1379-80. Courts may also consider, as the bankruptcy court did here, whether the debtor overfunded the plan or violated other IRS rules in contributing to the plan; the contribution amount by a corporation relative to the debtor's wages from that corporation; and the debtor's credibility and subjective intent. None of these additional factors is required or dispositive. After considering the totality of the circumstances relating to Rucker's Plan activities, we conclude that the bankruptcy court did not make a clear error in its conclusion that the Plans were designed and used primarily to shield assets. We hold that Rucker's Plans are not exempt under CPC § 704.115.

## IV

A private retirement plan is not necessarily designed and used primarily for retirement under CPC § 704.115 merely because a debtor never withdraws or borrows from the plan. Here, Rucker's unlawful and deceptive behavior in funding his Plans indicates, considering all the circumstances, that his Plans were not designed and used primarily for retirement and thus are not exempt under CPC § 704.115. We agree with the bankruptcy court that Cunning's objection to the exemption should be sustained. We reverse the contrary conclusion of

the district court. We remand for further proceedings consistent with this decision.[6]

**REVERSED AND REMANDED.**

---

[6]By concluding that we have jurisdiction over this appeal, we decide in favor of Rucker's cross-appeal. That cross-appeal correctly asserted that the district court's order was a final decision and that its remand to the bankruptcy court on an unrelated factual issue was not necessary. As a result of our decision, neither party may raise the previously uncontested factual issue on remand.

**EXHIBIT 4**

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

AUG 27 2009

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

| | |
|---|---|
| In the Matter of: LLOYD MYLES RUCKER, | No.  08-55652 |
| | D.C. No.  8:06-cv-01022-MMM |
| Debtor, | Central District of California, |
| | Santa Ana |
| ------------------------------- | |
| | |
| RONALD A. CUNNING, | **MANDATE** |
| Appellant, | |
| v. | |
| LLOYD MYLES RUCKER, | |
| Appellee. | |

| | |
|---|---|
| In the Matter of: LLOYD MYLES RUCKER, | No.  08-55655 |
| | D.C. No.  8:06-cv-01022-MMM |
| Debtor, | Central District of California, |
| | Santa Ana |
| ------------------------------- | |
| | |
| LLOYD MYLES RUCKER, | **MANDATE** |
| Appellee - Cross-Appellant, | |
| v. | |
| RONALD A. CUNNING, | |

Appellant - Cross- Appellee.

The judgment of this Court, entered 6/26/09, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court

/s/
By: Theresa Benitez
Deputy Clerk

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**650 Town Center Drive, Suite 950, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document described **MOTION FOR (1) ORDER SHORTENING TIME FOR NOTICE OF HEARING ON MOTION FOR TURNOVER OF CUSTODY OF FUNDS ON DEPOSIT AT WELLS FARGO ADVISORS, LLC, PURSUANT TO 11 U.S.C. SECTION 542(a) AND (2) REQUEST FOR ORDER UNDER 11 U.S.C. SECTION 105(a) KEEPING RESTRICTIONS IN PLACE PENDING FURTHER CORT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KYRA E. ANDRASSY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 1, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **September 1, 2009** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 1, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Hon. Robert Kwan
United States Bankruptcy Court
411 W. 4th Street
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 1, 2009 | Margaret Sciesinski | _(signature)_ |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**

| In re:<br>LLOYD MYLES RUCKER,<br><br>Debtor(s). | CHAPTER 7<br><br>CASE NUMBER 8:06-bk-10195-RK |
| --- | --- |

## II. **SERVED BY CERTIFIED MAIL/RRR AND OVERNIGHT MAIL**

Wells Fargo Advisors, LLC
Attn:  Managing Member
One North Jefferson Avenue
St. Louis, MO 63103

CSC-Lawyers Incorporating Service
Agent for Service of Process for
Wells Fargo Advisors, LLC
2730 Gateway Oaks Dr.
Suite 100
Sacramento, CA 95833

### **VIA OVERNIGHT MAIL**

United States Trustee
411 W. 4th Street
Suite 9041
Santa Ana, CA 92701

Lloyd Myles Rucker
110 Washington Avenue, #1724
Miami Beach, FL 33139
Debtor

Mark Bradshaw, Esq.
Shulman Hodges & Bastian, LLP
Towne Centre Plaza
26632 Towne Center Dr., Suite 300
Foothill Ranch, CA 92610-2808
Attorneys for Debtor

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                  **F 9013-3.1**